UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL COWHERD
    Plaintiff

v.                                                                                                                                No. 3:10CV-00662-S

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Alvin Wax. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 11 and 12, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 29, 2009, by administrative law judge (ALJ) George Jacobs. In support of his decision denying Title XVI benefits, Judge Jacobs entered the following numbered findings:

1. The claimant has not engaged in substantial gainful activity since February 26, 2007, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: glaucoma, hepatitis C, non-insulin dependent diabetes mellitus, degenerative disc disease, obesity, and bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine tasks at the light exertional level involving lifting ten pounds frequently and twenty pounds occasionally, sitting six out of eight hours and standing/walking six out of eight hours as defined in 20 CFR 416.967(b) with occasional postural activities but no climbing of ladders, ropes and scaffolds, occasional contact with coworkers and supervisors and no contact with the general public. He can perform work not requiring peripheral vision. He is to avoid work at unprotected heights, around dangerous machinery, bright lights, temperature extremes, and around fumes, odors, dusts, gases, and poor ventilation.

5. The claimant is capable of performing past relevant work as a general production worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act since February 26, 2007, the date the application was filed (20 CFR 416.920(f)).

(Administrative Record (AR), pp. 15-20).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a

whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe.

*Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).

### Listing 2.03 and 2.04

The plaintiff suffers from glaucoma. According to the American Foundation for the Blind (AFB) website:

> Glaucoma is a serious condition that involves an elevation in pressure inside the eye caused by a build-up of excess fluid. Left untreated, this pressure can impair vision by causing irreversible damage to the optic nerve and, eventually, blindness. Glaucoma results in peripheral vision loss, and is an especially dangerous eye

condition because it frequently progresses without obvious symptoms. This is why it is often referred to as "the sneak thief of sight."

There is no cure for glaucoma, although it can be treated. The damage to the optic nerve from glaucoma cannot be reversed. However, lowering the pressure in the eye can prevent further damage to the optic nerve and further peripheral vision loss.

If the plaintiff shows that he has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of the regulations, the so-called Listing of Impairments, a conclusive presumption attaches that he is disabled at the third step of the sequential evaluation process. If the plaintiff shows that he suffers from a visual impairment that satisfies the following clinical criteria he is entitled to an ultimate finding of disability:

> 2.03 Contraction of the visual field in the better eye, with:
>
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; OR
>
> B. A mean deviation of -22 or worse, determined by automated static threshold perimetry as described in 2.00A6a(v); OR
>
> C. A visual field efficiency of 20 percent or less as determined by kinetic perimetry (see 2.00A7b).
>
> 2.04 Loss of visual efficiency. Visual efficiency of the better eye of 20 percent or less after best correction (see 2.00A7c).

According to Charles T. Hall, *Social Security Disability Practice: A Lawyer's Perspective*:

> Visual acuity is not the only aspect of vision. A person may have 20/20 visual acuity, but have little usable vision because of severe tunnel vision. This is the reason for Listings 2.03 and 2.04. To determine a claimant's visual fields, the attorney needs to review the chart of peripheral visual fields which is part of a complete ophthalmologic exam. The visual fields are expressed on polar charts which are not difficult to read. The Listing itself contains an appendix [Table 2] which gives examples of visual field charts. To determine whether the claimant's widest diameter subtends an angle no greater than 20 degrees the attorney should draw the longest line possible between the farthest extensions of the visual field, so long as the line goes through the center point. If the longest line possible measures out to 20 degrees or less in the better eye, the claimant meets Listing 2.03A.

> It is tedious but not difficult to compute visual efficiency to determine whether a claimant meets Listings 2.03C or 2.04. There is a full explanation of the computation in the appendix to the Listing itself. Visual efficiency includes both visual acuity and loss of visual fields, so that a claimant who has some loss of visual acuity plus some loss of visual fields without meeting a Listing for either may still meet a Listing for loss of visual efficiency.

The magistrate judge concludes that the plaintiff has failed to show that his visual impairment meets or equals the clinical criteria of Listings 2.03 or 2.04 for the following reasons:

1. The administrative record in this case does not contain the detailed visual field charts set forth in Table 2 of the Listing or the computations of visual efficiency contemplated by the Listing. The closest the plaintiff has come to pointing this court to the results of a complete ophthalmologic examination needed to make the Listing determination is at AR, p. 233. The plaintiff has not explained how these raw notations satisfy the detailed and specific medical criteria contemplated by the Listing, and it is not apparent. The magistrate judge concludes that the plaintiff has failed to satisfy his third step burden.

2. As indicated above, the plaintiff has failed to identify any <u>medical</u> evidence satisfying the Listing. In the alternative, he argues as follows (Docket Entry No. 11, p. 3):

> The ALJ recognized that there was a field of vision problem because in his hypothetical to the vocational expert (VE), he included jobs where Cowherd "... can perform work not requiring peripheral vision" [AR, p. 50]. This limitation, no peripheral vision, meets Listing 2.03.

In his written decision, the ALJ found that the plaintiff "can perform work not requiring peripheral vision." ALJ's Finding No. 4. The magistrate judge agrees with the plaintiff that if, from a purely <u>medical</u> standpoint, he has experienced a one-hundred percent loss of peripheral vision, it appears that the Listing would be satisfied. However, the plaintiff's argument is unpersuasive because a limitation given by an ALJ in the form a hypothetical <u>assumption</u> or even a legal <u>finding</u> does not

rise to the level of the detailed and specific medical evidence contemplated by the Listing. In any event, the ALJ did not find that the plaintiff had a one-hundred percent loss of peripheral vision. He merely found that the plaintiff's peripheral vision is impaired to the extent that, at the administrative hearing, he decided to foregoing consideration of jobs requiring good use of peripheral vision.

3. Finally, the plaintiff attempts to place the burden of proof at step 3 of the evaluation process upon the Commissioner. He cites *Johnson v. Secretary*, 794 F.2d 1106 (6th Cir., 1986), for the proposition that "where the evidence suggests that a claimant may meet a Listing, the ALJ must develop the evidence in order to determine whether or not the Listing was met" (Docket Entry No. 11, p. 5). The issue in *Johnson* was whether Mr. Johnson satisfied the former obesity Listing 10.10. Listing 10.10 required a certain weight based on height and sex plus the presence of one of the following: a) joint or spine impairment, b) hypertension, c) congestive heart failure, d) venous insufficiency, or e) respiratory disease. Mr. Johnson clearly met the weight criteria. However, the ALJ's findings with respect to a, d, and e were equivocal. Accordingly, the court remanded the matter for a new decision and, if necessary, further development of the medical evidence. The magistrate judge concludes that *Johnson* is distinguishable from the facts of the present case because, unlike the ALJ in *Johnson*, Judge Jacob's findings with respect to the Listing are not equivocal and in need of clarification. The plaintiff simply failed to provide any evidence in support of a finding that his visual impairment satisfied the Listing.

## Limitations due to Hepatitis C

The plaintiff was diagnosed with hepatitis C in March of 2006 (AR, pp. 273). From June of 2006, through August of 2006, he was treated with ribavirin/interferon (AR, p. 483). His treatment apparently was interrupted and terminated during his incarceration from August of 2006, through February of 2007 (AR, p. 483). After release, in March of 2007, he resumed treatment, and by March of 2008, his viral load was non-detectable, and remained so sixth months thereafter (AR, p. 530). A treatment notation dated February 27, 2009, recounts the foregoing medical history and states that "patient says doing good ... no new complaints ... [hepatitis C virus] successfully cleared ... no need for [resumption of ribavirin/interferon] unless has complaint" (AR, pp. 530-531). The ALJ found that the plaintiff retains the ability to perform a limited range of light work, including his past relevant work as a general production worker, based, in part, upon the findings of Sanford Hamilton, M.D. (AR, p. 19). Among other things, Dr. Hamilton found as follows (AR, p. 286):

> Hepatitis C. The patient complains of intermittent fatigue. Today, the patient has adequate amount of strength and is unlikely that he would be able to return performing strenuous activity as a maintenance man; however, the patient could be retrained to perform other tasks that are of less strenuous nature. The patient maintains good gross manipulation and fine motor skills. He has adequate vision with glasses. He is able to pick up coins, zip a zipper, and open a door with either hand.

The plaintiff takes exception to the ALJ's finding that his "hepatitis C resolved following 48 weeks of treatment ending in March 2008 with liver enzymes returning to normal and was no longer required to return for further treatment" (AR, p. 16). According to the plaintiff, "The symptomatology existed for longer than 48 weeks as the ALJ would have one believe" (Docket Entry No. 11, p. 5). The magistrate judge concludes that the ALJ's finding that the

8

plaintiff's symptomatology was no longer disabling as of March 2008, is supported by the treatment notes, which indicated that his viral load was non-detectable at that time (AR, p. 530). In any event, any error was harmless inasmuch as the plaintiff has failed to point the court to any acceptable medical source opining specific limitations lasting at least twelve continuous months that are incompatible with the limited range of light work in ALJ's Finding No. 4.

### **Limitations due to Bipolar Disorder**

Some time during or after his incarceration, the plaintiff apparently was diagnosed with bipolar disorder and was prescribed Lithium. His psychiatric treatment records are at AR, pp. 504-513 and 533-537. The ALJ based his finding that the plaintiff can perform simple, routine tasks, with occasional contact with coworkers and supervisors and no contact with the general public (Finding No. 4), in part, upon the findings of Gary Maryman, Psy.D. (AR, p. 19 and 296-300).

While the plaintiff argues that he is more mentally limited than found by the ALJ, he has failed to identify an medical source who opined specific limitations in excess of those found by the ALJ. To the extent the plaintiff is attempting to rely upon his treatment records, the attempt is unpersuasive because neither the plaintiff not this court is qualified to interpret raw diagnoses and other clinical findings in functional terms. To the extent the argument is predicated upon certain global assessment of functioning (GAF) scores in the treatment record that too is unpersuasive because the Sixth Circuit has held that GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context over time. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648.

9

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).